## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PEDRO ALVAREZ #411322**                          **CIVIL ACTION**

**versus**                                                      **NO. 05-0888**

**WARDEN JAMES M. LEBLANC**                  **SECTION: "B" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Pedro Alvarez, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.  On January 6, 1999, he was convicted of possession of cocaine in violation of La.Rev.Stat.Ann. § 40:967.[2]  On March 17, 1999, he filed a motion for a new trial.[3]  On that same date, the motion for a new trial was denied, and he was sentenced to a term of thirty years imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.[4]  On July 18, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[5]  He then filed with the Louisiana Supreme Court related writ applications which were denied on September 13, 2002.[6]

Petitioner alleges that he filed with the state district court an application for a writ of *habeas corpus* on November 19, 2002, in which he argued that he should be released from custody because more than one year had elapsed from an order granting him a new trial on March 17, 1999. When he did not receive a ruling on that writ, he filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus on January 29, 2003.[7]  That application was

---

[2]  State Rec., Vol. I of II, transcript of January 6, 1999, p. 42; State Rec., Vol. I of II, minute entry dated January 6, 1999.

[3] State Rec., Vol. I of II.

[4]  State Rec., Vol. I of II, transcript of March 17, 1999, p. 3; State Rec., Vol. I of II, minute entry dated March 17, 1999.

[5]  State v. Alvarez, 792 So.2d 875 (La. App. 4th Cir. 2001) (No. 2000-KA-0819); State Rec., Vol. I of II.

[6]  State v. Alvarez, 824 So.2d 1190 (La. 2002) (No. 2001-KO-2437); State *ex rel.* Alvarez v. State, 824 So.2d 1185 (La. 2002) (No. 2001-KH-3051); State Rec., Vol. I of II.

[7] State Rec., Vol. I of II.

granted on March 25, 2003, for the sole purpose of transferring petitioner's writ of *habeas corpus* to the state district court for clarification of the record as to whether a new trial had in fact been granted.[8]   On April 3, 2003, the state district court held a hearing and clarified that petitioner's motion for a new trial was denied, not granted, on March 17, 1999.[9]   On June 4, 2003, petitioner filed with the Louisiana Fourth Circuit Court of Appeal a "Motion to Set Return Date,"[10] which was construed by the court as an application for a supervisory writ and denied on October 1, 2003.[11]   He then submitted to that court an application for rehearing which was returned to him unfiled on October 20, 2003.[12]

On October 17, 2003, petitioner again filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus asking that the state district court be ordered to act on his application for a writ of *habeas corpus* allegedly filed on November 19, 2002.[13]   That writ application was denied as repetitive on October 28, 2003.[14]   He then filed with the Louisiana

---

[8]   State v. Alvarez, No. 2003-K-0201 (La. App. 4th Cir. Mar. 25, 2003) (unpublished); State Rec., Vol. I of II.

[9]   State Rec., Vol. I of II, transcript of April 3, 2003.

[10]   State Rec., Vol. I of II.

[11]   State v. Alvarez, No. 2003-K-0994 (La. App. 4th Cir. Oct. 1, 2003) (unpublished); State Rec., Vol. I of II.

[12]   State Rec., Vol. I of II, letter from the Office of the Clerk to petitioner dated October 20, 2003 (advising petitioner that the court rules did not allow such a motion).

[13]   State Rec., Vol. I of II.

[14]   State v. Alvarez, No. 2003-K-1810 (La. App. 4th Cir. Oct. 28, 2003) (unpublished); State Rec., Vol. I of II.

Supreme Court an application for a "Writ of Certiorare [sic] (Review), Prohibition and Mandamus"[15] which was denied on November 24, 2004.[16]

On March 17, 2005, petitioner filed this federal application for *habeas corpus* relief.[17] In support of his application, petitioner claims:

1.    The trial court erred in denying petitioner's motion to suppress evidence;

2.    The trial court erred in denying petitioner's motion for a new

trial; and

3.    The Louisiana Fourth Circuit Court of Appeal erred in

denying petitioner's application for a writ of *habeas corpus*

and in not ordering that he be discharged from custody.

The state argues that petitioner's federal application is untimely.[18]  Generally, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence became final.  28 U.S.C. § 2244(d)(1)(A).[19]

---

[15]   State Rec., Vol. I of II.

[16]   State *ex rel*. Alvarez v. State, 888 So.2d 222 (La. 2004) (No. 2003-KH-3278).

[17]   Rec. Doc. 3.

[18]   Rec. Doc. 14.

[19]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

As noted, on September 13, 2002, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction. For AEDPA purposes, his conviction became "final" ninety (90) days later, when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner's one-period for seeking federal *habeas corpus* relief commenced on December 12, 2002, and expired one year later, on December 12, 2003, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Therefore, this Court must determine which, if any, of petitioner's post-conviction filings entitle him to statutory tolling.

### (1) "Application for Writ of *Habeas Corpus*"

As noted, petitioner alleges that he filed with the state district court an application for a writ of *habeas corpus* on November 19, 2002, in which he argued that he should be released from custody because more than one year had elapsed from an order granting him a new trial on

March 17, 1999.[20]  Although there is some dispute over whether that application was in fact filed, this Court, for the purposes of this decision, will assume that it was filed.

The state argues that petitioner is entitled to no tolling credit for that application for a writ of *habeas corpus* because it was not "properly filed."  This Court agrees.

Title X of the Louisiana Code of Criminal Procedure governs applications for writs of *habeas corpus* in Louisiana.  Under that title, such writs may be sought only by persons in custody "as a result of or incidental to an instituted or anticipated criminal proceeding."  La.C.Cr.P. art. 351.  Such writs are not available to individuals who have already been convicted and are able to file an application for post-conviction relief under Title XXXI-A of the Louisiana Code of Criminal Procedure.  Id; see also State *ex rel.* James v. State, 640 So.2d 259 (La. App. 1st Cir. 1993); State v. Thompson, 481 So.2d 1060 (La. App. 1st Cir. 1985).

At the time petitioner allegedly filed his application for a writ of *habeas corpus*, he had been convicted, his conviction had been affirmed on appeal, and the Louisiana Supreme Court had denied his related writ application.  He was still well within his period for seeking relief by filing a uniform application for post-conviction relief,[21] but he did not do so.  Moreover, the fact that he was representing himself does not excuse his improper filing.  Thompson, 481 So.2d at 1061 ("The petitioner, whether counseled or *pro se*, must use the uniform application for post conviction relief approved by the State Supreme Court.").  A filing not allowed by state law, such as

---

[20]  A copy of that purported application appears in the record as an attachment to a related application for writ of mandamus filed with the Louisiana Fourth Circuit Court of Appeal in case number 2003-K-0201.  State Rec., Vol. I of II.

[21]  See La.C.Cr.P. art. 930.8.

petitioner's application for a writ of *habeas corpus* in a post-conviction context, should not be considered "properly filed" so as to warrant statutory tolling under 28 U.S.C. § 2244(d)(2).  Brown v. Shannon, 322 F.3d 768, 775 n.5 (3rd Cir. 2003); see also Douglas v. Horn, 359 F.3d 257, 262 (3rd Cir. 2004); Adeline v. Stinson, 206 F.3d 249, 252-53 (2nd Cir. 2000); Evans v. Senkowski, 228 F.Supp.2d 254, 263 (E.D.N.Y. 2002).

### (2) Application for a Writ of Mandamus

Petitioner's next state court filing was the application for a writ of mandamus filed with the Louisiana Fourth Circuit Court of Appeal on January 29, 2003, and docketed as case number 2003-K-0201.[22]  In that application, petitioner requested that the intermediate appellate court order the state district court to act on the application for a writ of *habeas corpus*.  The United States Fifth Circuit Court of Appeals has held that an application for a writ of mandamus does not qualify for tolling credit because it is not an application for state post-conviction relief or other collateral review.  Moore v. Cain, 298 F.3d 361 (5th Cir. 2002).

### (3) "Motion to Set Return Date"/"Application for Rehearing"

Petitioner's next state court filing was the "Motion to Set Return Date" filed with the Louisiana Fourth Circuit Court of Appeal on June 4, 2003, and docketed as case number 2003-K-0994.[23]  In that filing, petitioner asked that the intermediate appellate court set a return date for him to challenge the state district court's denial of the application for a writ of *habeas corpus*.  The

---

[22]  State Rec., Vol. I of II.

[23]  State Rec., Vol. I of II.

intermediate appellate court treated the filing as an application for a supervisory writ which it then denied on October 1, 2003.[24]

For the reasons previously set forth, petitioner was entitled to no tolling credit for his improperly filed application for a writ of *habeas corpus*.  It should necessarily follow, then, that this related filing, which challenges the denial of that writ, likewise entitles petitioner to no tolling credit.

Petitioner then submitted to the Louisiana Fourth Circuit Court of Appeal an application for rehearing[25] which was returned to him unfiled on October 20, 2003, on the ground that such applications are prohibited by court rule.[26]  Petitioner obviously is entitled to no tolling credit for that the application, which was both improper and never actually filed.

<u>(4) Application for a Writ of Mandamus</u>

Petitioner's next state court filing was the application for a writ of mandamus filed with the Louisiana Fourth Circuit Court of Appeal on October 17, 2003, and docketed as case number 2003-K-1810.[27]   In that application, petitioner again requested that the intermediate appellate court order the state district court to act on the application for a writ of *habeas corpus*. Again, as noted previously, the United States Fifth Circuit Court of Appeals has held that an

---

[24]   <u>State v. Alvarez</u>, No. 2003-K-0994 (La. App. 4th Cir. Oct. 1, 2003) (unpublished); State Rec., Vol. I of II.

[25]   State Rec., Vol. I of II.

[26]   State Rec., Vol. I of II, letter from the Office of the Clerk to petitioner dated October 20, 2003.

[27]   State Rec., Vol. I of II.

application for a writ of mandamus does not qualify for statutory tolling under 28 U.S.C. § 2244(d)(2).  Moore v. Cain, 298 F.3d 361 (5th Cir. 2002).

### (5) "Writ of Certiorare [sic] (Review), Prohibition and Mandamus"

Petitioner's final state court filing was his application for a "Writ of Certiorare [sic] (Review), Prohibition and Mandamus"[28] filed with the Louisiana Supreme Court on or after November 6, 2003, and docketed as case number 03-KH-3278.  The application, which challenges the intermediate appellate court's denial of his mandamus application, is arguably simply another attempt to secure a writ of mandamus and, as such, again would not entitle petitioner to tolling.  However, out of an abundance of caution, the Court notes that even if petitioner were given statutory tolling credit for this filing, his federal application would still be untimely for the following reasons.

The Louisiana Supreme Court writ application cannot be considered to have been filed any earlier than November 6, 2003, the date it was signed.[29]  At that point, three hundred twenty-eight days of petitioner's one-year period had already elapsed.  Even if petitioner is granted tolling credit from November 6, 2003, tolling ceased no later than November 24, 2004, when the application was denied.[30]  At that point, petitioner would have had only thirty-seven days remaining of the statute of limitations, meaning that his federal application would have to be filed on or before

---

[28]  State Rec., Vol. I of II.

[29]  See Causey v. Cain, No. 04-30618, 2006 WL 1413490 (5th Cir. May 24, 2006) (holding that the "mailbox rule" is to be applied when determining filing dates of state court filings in Louisiana).

[30]  State ex rel. Alvarez v. State, 888 So.2d 222 (La. 2004) (No. 2003-KH-3278).

December 31, 2004.  Because petitioner's federal application was not filed until March 17, 2005,[31] and because he is entitled to no further statutory tolling[32] or equitable tolling,[33] the federal application was untimely filed.

Despite the fact that the undersigned has concluded that petitioner's federal application is indeed untimely as the state contends, it is also noted that petitioner's claims are patently meritless.  Therefore, even if petitioner's application were considered timely filed, he still would not be entitled to relief for the following reasons.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law

---

[31] Petitioner signed his application for federal *habeas corpus* relief on March 17, 2005.  Rec. Doc. 3.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

[32] Petitioner had no other applications pending in state court between November 24, 2004, and December 31, 2004.

[33] The United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, be equitably tolled.  <u>See</u> <u>Davis v. Johnson</u>, 158 F.3d 806, 811 (5th Cir. 1998).  However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted).  This Court knows of no reason that would support equitable tolling of the statute of limitations regarding petitioner's federal application for *habeas corpus* relief.

and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).

Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

      As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

      As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

      On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

Jefferson Parish Sheriff's Officer Sergeant Bruce Harrison testified that he developed information that he relayed to New Orleans Police Detective Paul Toye on May 5, 1997.  Sergeant Harrison was part of the surveillance team involved in the case, and he later observed the search of defendant's truck.  He identified the four bricks of cocaine that were found in the rim of the spare tire and said some documentation was recovered from the truck.

New Orleans Police Detective Michael Harrison testified that on May 5, 1997, he positioned himself near Interstate 10, near the twin-span bridge coming from Slidell.  He was on the lookout for a green Dodge pickup truck, which he soon observed driving into New Orleans.  He began following it and confirmed the license plate number.  Defendant was the driver and sole occupant of the vehicle. Other officers stopped the vehicle, and defendant and the vehicle were taken to police headquarters.  Detective Harrison was present when the truck was searched.  He identified photographs of (1) a suitcase containing personal effects that was found inside of the truck, (2) another officer removing the spare tire from underneath the truck, and (3) two plastic-wrapped packages of cocaine inside of the rim of the spare tire.  The two plastic-wrapped packages each contained one sock-like package, and each of those contained two bricks of cocaine.  Detective Harrison stated on cross-examination that he believed one used a particular tool that came with the truck to release the spare tire.  He confirmed that it was "very possible" that anyone who had access to the truck would have had access to the spare tire.

New Orleans Police Detective Adam Henry began following defendant's Dodge Ram Charger pickup truck on I-10 after it was spotted by Detective Michael Harrison.  Detective Henry found the cocaine on top of the spare tire when he removed it.  Detective Henry testified that the 2.1 kilograms of cocaine were valued at between $19,000-$22,000 per kilogram and up to $140,000 if adulterated and sold in street sales.  During cross-examination, defense counsel essentially conceded that the truck was registered to defendant and insured by him.

New Orleans Police Detective Paul Toye testified that he applied for and obtained a search warrant for a 1996 Dodge Ram pickup truck registered to defendant.  He identified approximately $1,600 in currency wrapped in rubber bands found in defendant's billfold, approximately $1,000 in currency wrapped in rubber bands found in a suitcase located in the cab of the truck, and approximately $380 found on defendant's person.  Detective Toye observed a crime

lab technician attempt, but fail, to lift fingerprints from the various layers of coverings on the bricks of cocaine-the black plastic outer covering, the socks, and the clear plastic covering each of the bricks.

New Orleans Police Criminalist William Giblin was qualified by stipulation as an expert in identifying and analyzing controlled dangerous substances.  He testified at trial that he tested samples removed from each of the four bricks consisting of a white substance. The samples were positive for cocaine, and the cocaine weighed approximately two thousand ounces.[34]

<u>Denial of Motion to Suppress</u>

Petitioner's first claim is that the trial court erred when it denied the defense motion to suppress evidence.  That claim, which is based on the Fourth Amendment to the United States Constitution, is not reviewable in this federal proceeding.

In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  <u>Id</u>. at 494 (footnote omitted); <u>see also</u> <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002).  The <u>Stone</u> bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.  <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324 (5th Cir. 1978).

---

[34]   <u>State v. Alvarez</u>, 792 So.2d 875 (La. App. 4th Cir. 2001) (No. 2000-KA-0819); State Rec., Vol. I of II.

In the instant case, petitioner's counsel filed a motion to suppress[35] which was denied by the state district court after an evidentiary hearing was held on January 23, 1998.[36]  On direct appeal, petitioner reasserted his Fourth Amendment claim.  The Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In his first supplemental assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence, as the application for the search warrant failed to establish probable cause to believe that there was contraband secreted in his truck.
>
> The defendant bears the burden of proving that the evidence seized with a warrant should be suppressed.  La.C.Cr.P. art. 703(D).  A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony.  State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194.  This court set out the law pertaining to the issuance of search warrants in State v. Martin, 97-2904 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, writ denied, 99-0874 (La. 10/1/99), 747 So.2d 1136, as follows:
>
>> La.C.Cr.P. article 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant."  The Louisiana Supreme Court has held that probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched.  State v. Duncan, 420 So.2d 1105 (La. 1982).  The facts which form the basis for probable cause to issue a search warrant must be

---

[35]  State Rec., Vol. I of II.

[36]  State Rec., Vol. I of II, transcript of January 23, 1998.

contained "within the four corners" of the affidavit. Id. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480 (La. 1984), cert. denied Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The determination of probable cause involves probabilities of human behavior as understood by persons trained in law enforcement. State v. Hernandez, 513 So.2d 312 (La.App. 4 Cir. 1987), writ denied, 516 So.2d 130 (La. 1987).

In its review of a magistrate's finding of probable cause, the reviewing court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

97-2904 at pp. 4-5, 730 So.2d at 1031-1032.

In the search warrant affidavit officer Toye stated:

On, Monday, May 5, 1997, narcotics Detectives Paul Toye and Yvonne Farve, received information from Agent Bruce Harrison, of the Jefferson Parish Narcotics Division, that he had a confidential and credible informant who has provided information in the past, that resulted in the arrest and confiscation [sic] of known narcotics traffickers, and their contraband.

Agent Harrison informed Detective Toye that the informant knew of a black male subject, known to the informant as Pedro Alvarez. The informant stated that Mr. Alvarez drove to Miami Florida to purchase five (5) kilograms of cocaine, from a source in Miami

that was known to both the informant and Mr. Alvarez. The informant further stated that he had first hand information, that Mr. Alvarez was in fact in Miami on May 3rd and 4th, 1997, and that Mr. Alvarez had purchased five (5) kilograms of cocaine, and was expected to return to New Orleans, Louisiana, on the 5th of May.

The informant stated that he had been in contact with Mr. Alvarez, and that he had been advised, that Mr. Alvarez would be leaving Miami, at approximately 7:00 am on the morning of May 5th, 1997, enroute back to New Orleans, Louisiana. The informant further stated that Mr. Alvarez would be traveling, in a 1996, green Dodge Ram Charger, pickup truck, bearing Louisiana license plate number S708053. The informant stated that Mr. Alvarez, would feel relatively sure of himself, due to the fact that he had a secret compartment concealed within the vehicle.

Detective Farve conducted a computer check of the license plate number S708053 supplied by the informant. The check revealed the license plated [sic] to be affixed to a 1996, Dodge, 6000, pickup truck, green in color, registered to Pedro Alvarez, residing at 14003 Curran Road, with Louisiana drivers license number 2947425. Detective Farve also conducted a computer check on the aforementioned drivers license number and found it to be registered to Pedro Alvarez, black male, 04-14-53, 5' 6 inches tall, weighing 150 pounds, residing at 14003 Curran Road, Social Security number 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.

The informant further stated that he had first hand knowledge that Mr. Alvarez would be traveling to his residence, located at 14003 Curran Road, and that Mr. Alvarez also had numerous hiding spots within his residence, in order to conceal his contraband.

Predicated on the information from the established source, Detectives [sic] Toye along with Jefferson Parish Narcotics, elected to setup [sic] a surveillance of the highways from Miami Florida back to New Orleans Louisiana, in an effort to intercept Mr. Alvarez before he can secrete any

- 16 -

narcotics into the New Orleans area. It is hereby respectfully requested, that an order of search be made issue, for one 1996, Dodge Ram Charger, pickup truck, owned and operated by Mr. Pedro Alvarez.

In the seminal case of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause to believe that drugs were in a vehicle returning to Chicago from Florida was found based on the totality of the circumstances. Someone sent an anonymous letter to police, stating that Mr. and Mrs. Gates made their living selling drugs. The letter stated that Mrs. Gates would drive from the couple's home in the Chicago area to Florida on May 3, leave her car to be filled up with drugs, and her husband would fly down in a few days to drive the car back. Police confirmed that Mr. Gates flew from Chicago to West Palm Beach, Florida on May 5 and went to a hotel room registered to his wife. He left at 7:00 a.m. the next day with an unidentified woman and began driving northbound on an interstate highway frequently used by travelers to the Chicago area. The United States Supreme Court held that based on this information, the "totality of the circumstances," there was probable cause to believe that the car contained drugs.

In State v. Andrews, 97-2321 (La.App. 4 Cir. 11/13/97), 703 So.2d 137, an affidavit recited that two confidential informants, one who had provided "good information" in several other stolen automobile cases, had given two separate police officers information that a "chop shop" was being operated at particular address. The affidavit further recited that officers went to the location and observed various stripped and partially stripped late model vehicles scattered throughout the yard. This court held that the information in the affidavit provided the magistrate judge with good cause to issue the search warrant.

While defendant notes that the affidavit does not recite that information from the informant had led to any convictions in the past, the affidavit does state that the informant's information had led to arrests and confiscation of narcotics. What is at issue in the instant case is whether there was probable cause to believe that contraband, more specifically cocaine, would be found in defendant's truck at the time of the search. Whether or not there were convictions in the prior cases is not determinative of the issue of whether or not the informant was privy to information concerning the presence of narcotics. However, defendant correctly notes that the only information given by the informant that was verified was his name, address, license

- 17 -

plate number, and description of his vehicle.  This was information that could have been obtained by anyone who knew defendant's name, address, and the vehicle he drove.  This was a known informant, presumably someone whom the police could hold accountable for falsely reporting criminal activity. [FN]  There was no information in the affidavit concerning the basis of the informant's knowledge, although he said he had first-hand information from a source known to him about defendant's supposed purchase of narcotics in Miami.

> [FN] See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (there is a suggestion rigorous scrutiny of the basis of a known informant's knowledge is not necessary as he or she may be subject to arrest for making a false complaint if the tip is unfounded.)

Considering the totality of the facts and circumstances set forth in the affidavit, the issuing magistrate could not have had a substantial basis for concluding that there was probable cause to believe that cocaine would be found in defendant's vehicle at the time the search warrant was executed.

Even though the affidavit was not sufficient to establish probable cause, the evidence need not be suppressed if the officers who executed it believed it had been validly issued.  U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Shortridge, 98-2060, pp. 4-6 (La.App. 4 Cir. 12/22/99), 750 So.2d 339, 341-342.  However, the court cautioned in Leon that an officer would not manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  468 U.S. at 923, 104 S.Ct. at 3421.  In State v. Varnado, 95-3127 (La. 5/31/96), 675 So.2d 268, the court elaborated on Leon and the application of the good faith exception as follows:

> [T]he exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916, 104 S.Ct. at 3417.  Its application therefore "must be carefully limited to the circumstances in which it will pay its way by deterring official [ ]lawlessness." Id., 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 n. 6 (quoting Illinois v. Gates, 462 U.S. 213, 257-58, 103 S.Ct.

2317, 2342, 76 L.Ed.2d 527 (1983)) (White, J. concurring in the judgment). As a general rule, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Leon, 468 U.S. at 921, 104 S.Ct. at 3419. Accordingly, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id., 468 U.S. at 918, 104 S.Ct. at 3418 (footnote omitted).

Leon's good faith rule presupposes that the police "have a reasonable knowledge of what the law prohibits." Id., 468 U.S. at 919 n. 20, 104 S.Ct. at 3419. ....

The reasonableness inquiry under Leon is an objective one, which turns on the totality of the circumstances surrounding the issuance of the warrant. Id., 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. Those circumstances include the overall familiarity of the officer applying for the warrant with the investigation and the degree to which he has participated in the events leading to the search. See Massachusetts v. Sheppard, 468 U.S. at 989 n. 6, 104 S.Ct. at 3428 n. 6 ("In this case, Detective O'Malley, the officer who directed the search, knew what items were listed in the affidavit [he] presented to the judge.... Whether an officer who is less familiar with the warrant application or who has unalleviated concerns about the proper scope of the search would be justified in failing to notice [the] defect ... in the warrant in this case is an issue we need not decide.")

95-3127 at pp. 3-4, 675 So.2d at 270.

The police officers in the instant case that conducted the search pursuant to the search warrant were privy to one important fact not known to the magistrate who issued the search warrant. The informant stated that defendant would be driving into New Orleans on May 5th, and this prediction had proven correct. The confirmation of this information supported the reliability of the informant and gave veracity to his tip that defendant would be transporting a large amount of cocaine. See Alabama v. White, 496

U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 ("[b]ecause
only a small number of people are generally privy to an individual's
itinerary, it is reasonable for police to believe that a person with
access to such information is likely also to have information about
that individual's illegal activities.")

Given that the officers knew this important additional bit of
information, it cannot be said that they acted in bad faith in executing
the search warrant.

There is no merit to this assignment of error.[37]

Without assigning reasons, the Louisiana Supreme Court subsequently denied
petitioner's writ applications challenging the intermediate appellate court's judgment.[38]

Based on the foregoing, it is clear that petitioner was afforded a full and fair
opportunity to litigate his Fourth Amendment claim in state court and he, in fact, did so.  Therefore,
Stone bars this Court from granting petitioner relief based on that claim.

<u>Denial of Motion for New Trial</u>

Petitioner next claims that the trial court erred in denying his motion for a new trial.
The Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In this assignment of error, the defendant claims that the trial
> court erred in denying his motion for a new trial on the ground that
> the trial court improperly coerced the jury to continue deliberating
> until they were able to reach a verdict.
>
> The record contains a written motion for new trial, dated
> March 17, 1999, setting forth the sole ground that the verdict was
> contrary to the law and evidence.  No ground was asserted relating to
> the deliberative process.  A minute entry from March 17, 1999,
> reflects that the trial court denied the motion.

---

[37]  State v. Alvarez, 792 So.2d at 881-84; State Rec., Vol. I of II.

[38]  State v. Alvarez, 824 So.2d 1190 (La. 2002) (No. 2001-KO-2437); State ex rel. Alvarez v.
State, 824 So.2d 1185 (La. 2002) (No. 2001-KH-3051); State Rec., Vol. I of II.

The denial of a motion for new trial alleging that the verdict is contrary to the law and evidence presents nothing for appellate review.  State v. Snyder, 98-1078, p. 37, n. 21 (La. 4/14/99), 750 So.2d 832, 859, n. 21.

Although it is questionable that this issue is properly before this Court in light of the defendant's failure to make a contemporaneous objection to the complained of charge, pursuant to La.C.Cr. P Arts. 801, 841, we will address the merits of this claim as we do not believe that the trial judge's charge to the jury reached the level of an "Allen" charge.

In State v. Collor, 99-0175 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, this Court addressed the "Allen" charge or "dynamite" charge.

> The Allen charge originated in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.2d 528 (1896), where the United States Supreme Court approved a charge to break a jury deadlock and accomplish jury unanimity.  However, the Louisiana Supreme Court has banned the use of the Allen charge and subsequent modifications of it.  State v. Nicholson, 315 So.2d 639 (La. 1975).  While our Supreme Court recognized the authority of the trial court to give further instructions to a jury unable to agree upon a verdict, it found the Allen charge problematic for two reasons.  First, the charge emphasizes that the jury has a duty to reach a verdict, implying that the trial judge will not accept a mistrial.  Second, when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exist an almost overwhelming pressure to confirm the majority's view.  State v. Campbell, 606 So.2d 38, 40 (La.App. 4 Cir. 1992).  Thus, if a trial judge gives an Allen charge or any "coercive modification" of same, the trial court will have committed reversible error.  Nicholson, supra.

In the case sub judice, the trial court made the following comment.

> You've deliberated – I think ya'll deliberated around 7:30.  And at that point in time at least I

noticed that ya'll had a problem, which was about 10-15 minutes ago. That's about an hour and a half of deliberations, jurors, which is not, honestly, not very long to talk about the case. I understand that ya'll probably are somewhat divided, in terms of some result in this case. But being divided or not able to come to a conclusion is not unusual at all. And, honestly, to have an expectation that you will arrive at a conclusion; that is, ten of you will agree as to some decision in this case in an hour and a half is maybe, in all honesty, an unrealistic expectation, I mean, that's just not very long to deliberate. It really isn't.

If there's something that I can do, in terms of either instructing you as to the law, giving you additional instructions as to law, if there's anything else that I can do, in terms of making deliberations comfortable, then I can do that. But maybe, jurors, ya'll need to talk about this a little bit more before we call it an evening. So what I'm going to do is I'm going to have you go back down to the jury room, let ya'll look at each other some more and then I'll call ya'll back for after a while if you can't decide.

Clearly, the trial court did not suggest to the jurors to rethink their positions in an effort to join the majority's opinion. Rather he simply suggested that they "talk about this a little more." Considering the jury had deliberated for a mere ninety minutes before informing the judge that they were unable to arrive at a conclusion, the judge's charge to the jury did not rise to the level of an "Allen" charge. The trial court did not abuse its discretion, and there is no merit to this assignment of error.[39]

To the extent that petitioner is arguing that Louisiana law is more restrictive than federal law regarding the use of <u>Allen</u> charges and that the state court misapplied the more restrictive state law, his claim is not cognizable in this Court. Even if the state court misapplied state law, with

---

[39] <u>State v. Alvarez</u>, 792 So.2d at 884-86; State Rec., Vol. I of II.

respect to either the use of such charges or the state laws regarding the granting of new trials, petitioner would not be entitled to federal *habeas corpus* relief based on any such error. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" <u>Trevino v. Johnson</u>, 168 F.3d 173, 184 (5th Cir. 1999) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)). Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Issac</u>, 456 U.S. 107, 119 (1983).

To the extent that petitioner is arguing that the supplemental charge was so egregious as to violate federal law, his claim has no merit. The use of such supplemental charges "has long been sanctioned" under federal law. <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 237 (1988). To obtain federal *habeas corpus* relief based on such a charge, a petitioner "must establish that the court's charge, under the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair." <u>Montoya v. Scott</u>, 65 F.3d 405, 409 (5th Cir. 1995).

The charge in petitioner's case clearly did not rise to that level. The charge did not contain what has been termed "the most troublesome feature of the Allen charge," i.e. an "exhortation to the minority to reexamine its views in light of the majority's arguments." <u>Id</u>. at 409-10. In this case, no comments were directed specifically to the minority jurors; further, such jurors were not prompted, much less coerced, to change their views to reach consensus. Moreover, the charge did not run afoul of federal law by stating or even implying that the jurors must reach a verdict. <u>See</u> <u>Boyd v. Scott</u>, 45 F.3d 876, 883-84 (5th Cir. 1994). Here, the jurors, who had deliberated for a relatively brief period of time, were simply encouraged to continue deliberation.

Such encouragement alone does not constitute impermissible coercion.  Id. at 884.  Additionally,

that the jurors perceived no such coercion is evidenced by the fact that they deliberated for more

than another hour after the supplemental instruction was given.[40]

Fourth Circuit Denial

Petitioner's final claim is that the Louisiana Fourth Circuit Court of Appeal erred in

denying petitioner's application for a writ of *habeas corpus* and in not ordering that he be discharged

from custody.  This claim is plainly meritless.

The basis of petitioner's claim is an apparent contradiction which appeared in the

state court record.  After petitioner's conviction, defense counsel filed a motion for a new trial.[41]

That motion was heard and was clearly denied on the record, with petitioner present, on March 17,

1999.  The transcript of that hearing reflects the following exchange:

> BY THE COURT:
>      As to the motion for a new trial, is there anything else that the
> defendant, Mr. Dohre, you would like to say as to a motion for a new
> trial before I rule on it?
>
> MR. DOHRE [defense counsel]:
>      Yes, Your Honor.  There was a lengthy transcript where Mr.
> Regan argued that the evidence should have been suppressed as an
> illegal search of the vehicle.  And we would like the Court to
> consider – reconsider that issue, in fairness, to grant Mr. Alvarez a
> new trial.

---

[40]  State Rec., Vol. I of II, minute entry dated January 6, 1999, p. 2.

[41]  State Rec., Vol. I of II.

BY THE COURT:

I'm going to deny the same. I note an objection on behalf of Mr. Alvarez. But the motion for a new trial is denied. And I note his objection to the same. ...[42]

That the motion was denied, and that petitioner was aware of that fact, is further evidenced by the fact that, as discussed above, he raised the issue in his direct appeal, arguing that the motion for a new trial was wrongly denied. As noted previously, that claim was rejected.

Apparently at some time thereafter, petitioner discovered that the trial judge had, however, signed the proposed order of the bottom of the motion for a trial which read:

### ORDER

Considering the above and foregoing Motion for New Trial:

IT IS ORDERED that a new trial be and the same is hereby granted to the defendant, PEDRO ALVAREZ, on or before the 17 day of March, 1999.

New Orleans, Louisiana, this 17 day of March, 1999.[43]

However, it is evident that the intent was merely to set the motion for hearing on March 17, 1999, not to grant a new trial to begin on that date. Although petitioner now tries to make much ado about the existence of this order, it is indeed much ado about nothing. Orders are at times signed in error, as was obviously done in the instant case. The record reflects that it was clear at the time that the motion had been denied. However, due to petitioner's complaints, the Louisiana Fourth Circuit Court of Appeal even ordered the trial court to clarify the record, noting that the court had the

---

[42] State Rec., Vol. I of II, transcript of March 17, 1999, p. 3.

[43] State Rec., Vol. I of II.

"authority to correct a ministerial error if it never intended to grant the new trial."[44]   The trial court

did just that at a hearing held on April 3, 2003, at which time the trial judge stated:

> The motion for new trial was never granted.  It was denied.  Now the
> fact that the document doesn't reflect that, I'm sorry.  But the motion
> for a new trial was denied.  It was denied in 1999.  And, Mr. Alvarez,
> again I deny the motion for a new trial.  I note your objection on your
> behalf to the denial, but I don't know what else to do with this.  And
> I'm not quite sure why the Appellate Court sent it back to me to deal
> with this, since they would have had access to the same transcript
> we're reading from.  The motion for a new trial was denied.  When
> the motion for a new trial was submitted, it was denied.  I am not
> quite sure why you are here.  But for the record, it is denied again.
> I note an objection on your behalf.[45]

Not content to let the issue rest, petitioner subsequently filed two other writ applications with the

Louisiana Fourth Circuit Court of Appeal arguing that his motion for a new trial had been granted.

With respect to the first of those applications, the intermediate appellate court denied the application

noting that the motion for a new trial was denied and the record had been clarified to reflect that

fact.[46]  With respect to the second of those applications, the intermediate appellate court denied the

application as repetitive.[47]

Petitioner is essentially arguing that the Louisiana Fourth Circuit Court of Appeal

misapplied state law in allowing the trial court to clarify the record and in rejecting his final

---

[44]  State v. Alvarez, No. 2003-K-0201 (La. App. 4th Cir. March 25, 2003); State Rec., Vol. I of
II.

[45]  State Rec., Vol. I of II, transcript of April 3, 2003, p. 3.

[46]  State v. Alvarez, No. 2003-K-0994 (La. App. 4th Cir. Oct. 1, 2003) (unpublished); State Rec.,
Vol. I of II.

[47]  State v. Alvarez, No. 2003-K-1810 (La. App. 4th Cir. Oct. 28, 2003) (unpublished); State Rec.,
Vol. I of II.

application as repetitive.  Even if either of those actions were erroneous under state law, which they were not, it would be of no consequence.  As noted previously, federal *habeas* courts are not to reexamine state-court determinations on state-law questions.  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999).  Rather, federal *habeas corpus* relief may be granted only to remedy violations of federal law.  28 U.S.C. § 2254; Engle v. Issac, 456 U.S. 107, 119 (1983).  Petitioner does not allege, and this Court does not find, that any violation of federal law occurred when the trial court was allowed to clarify the record in this case.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Pedro Alvarez be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of June, 2006.



SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE